Weaver, J.
(.dissenting). I dissent to the unscheduled and abrupt adoption of Administrative Order 2006-08 (AO 2006-08) by the majority *1262 of four, Chief Justice Taylor and Justices Corrigan, Young, and Markman,[41] because it unconstitutionally restricts a justice’s ability to perform his duty to the public by barring a justice from “giv[ing] in writing” his “reasons for each decision” and “the reasons for his dissent.”[42] By adopting AO 2006-08 and ordering the suppression of my dissent in Grievance Administrator v Fieger, #127547, the majority of four are attempting to hide their own unprofessional conduct and abuse of power which has resulted in their failure to conduct the judicial business of the people of Michigan in an orderly, professional, and fair manner.
The majority’s adoption of AO 2006-08 during an unrelated court conference, without public notice or opportunity for public comment, illustrates the majority of four’s increasing advancement of a policy of greater secrecy and less accountability — a policy that wrongly casts “a cloak of secrecy around the operations” of the Michigan Supreme Court.[43]
Simply put, AO 2006-08 is a “gag order,” poorly disguised and characterized by the majority of four as a judicial deliberative privilege. The fact is, no Michigan case establishes a “judicial deliberative privilege,” nor does any Michigan statute, court rule, or the Michigan Constitution.
*1263 AO 2006-08 — the “gag order”— has been hastily created and adopted by the majority of four, without proper notice to the public, and without opportunity for public comment, despite such requirements directed by Administrative Order 1997-11. Administrative Order 1997-11(B)(2) states:
Unless immediate action is required, the adoption or amendment of rules or administrative orders that will significantly affect the administration of justice will be preceded by an administrative public hearing under subsection (1). If no public hearing has been held before a rule is adopted or amended, the matter will be placed on the agenda of the next public hearing, at which time the Supreme Court will hear public comment on whether the rule should be retained or amended. (Emphasis added.)
The adoption of AO 2006-08 was not preceded by an administrative public hearing. Further, AO 2006-08 was not shown on the notice of public administrative hearing scheduled for January 17, 2007 agenda that was circulated and published on December 14, 2006. After learning that AO 2006-08 was not placed on the next public administrative hearing agenda as required by AO 1997-11,1 informed by memo of the same date (December 14) the justices and relevant staff, that AO 1997-11(B)(2) requires that AO 2006-08 be included in the notice for the next public administrative hearing on January 17, 2007. That AO 2006-08 significantly affects the administration of justice is obvious given that the majority of four relied on it to order on December 6, 2006, the suppression of my dissent in Grievance Administrator v Fieger, #127547, motion to stay. As of today, December 19, 2006, AO 2006-08 has not been placed on the January 17, 2007 public hearing notice and agenda.[44]
The majority has not publicly articulated any reason why AO 2006-08 should be adopted, nor any reason why immediate action without prior notice to the public or a public hearing was necessary. Article 6, § 6 of the Michigan Constitution requires in writing reasons for decisions of the Court. However, AO 2006-08 can be employed by any majority to impermissibly and unconstitutionally restrict the content of a justice’s dissent or concurrence. Thus any present or future majority can in essence censor and suppress a dissenting or concurring justice’s opinions.
The public has a vested, constitutional interest in knowing the reasons for a dissenting or concurring justice’s divergence from a majority opinion.[45] The majority of four’s efforts to censor and suppress *1264 the opinions of other justices significantly affect the administration of justice and violate the Michigan Constitution’s, art 6, § 6. The “gag order,” AO 2006-08, is unconstitutional and unenforceable. As employed by the majority in Grievance Administrator v Fieger, #127547, the current majority is using AO 2006-08 to censor and suppress my dissent. I cannot and will not allow it to interfere with the performance of my duties as prescribed by the Michigan Constitution and with the exercise of my rights of free expression as guaranteed by both the Michigan Constitution and the United States Constitution.
The majority of four has adopted this “gag order” (AO 2006-08) in order to suppress my dissent in Grievance Administrator v Fieger, motion for stay, #127547. Finding no “gag rule” in the Michigan Constitution, statutes, case law, court rules and canons of judicial ethics, the majority of four has decided instead to legislate its own “gag order.” The majority of four’s “gag order” evidences an intent to silence me now, and to silence any future justice who believes it is his duty to inform the public of serious mishandling of the people’s business. [46]
*1265 The majority’s “gag order” purportedly protects the justices’ deliberations under a so-called “judicial deliberative privilege” based on unwritten traditions.
But the Michigan Constitution, statutes, case law, and court rules do not establish a judicial deliberative privilege.[47] In fact, the closest thing to a “judicial deliberative privilege” in Michigan is contained within the Canons of the Code of Judicial Conduct. It is this so-called “judicial deliberative privilege” that I have understood for my entire 32-year judicial career, and by which I strive to abide.
As to a judge’s ability to speak regarding “a pending or impending proceeding in any court,” Canon 3A(6) provides:
A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar *1266 abstention on the part of court personnel subject to the judge’s direction and control. This subsection does not prohibit a judge from making public statements in the course of official duties or from explaining for public information the procedures of the court or the judge’s holdings or actions.
Canon 3A(6) thus recommends against a judge speaking on a case that is pending or impending in any court; however, Canon 3A(6) does not absolutely prohibit comment on such cases.[48]
As to a judge’s “administrative responsibilities,” Canon 3B does not even address, much less recommend or require, abstention from public comment. Canon 3B(1) does state that
[a] judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
One way to “facilitate the performance of the administrative responsibilities of other judges and court officials” is to inform the public when they need to know of a misuse or abuse of power, or know of repeated, unprofessional behavior seriously affecting the conduct of the people’s business.
Certainly nothing in Canon 3 can be said to create any obligation of confidentiality or permanent secrecy like that adopted by the majority of four in AO 2006-08, and in the November 13, 2006, IOE It should be noted that there have been instances both in the past and present, in which justices have made references in opinions to matters discussed at conference and in memorandum, and to actions before the Court.[49]
*1267 In determining when one must speak out, or abstain from speaking out, I am guided by the fact that, as a justice, I am accountable first and foremost to the public. The public expects to be informed by a justice if something is seriously wrong with the operations of the Supreme Court and the justice system. How else would the public know and be able to correct the problem through the democratic and constitutional processes? The public rightly expects the justices of this Court to act with courtesy, dignity, and professionalism toward one another. In matters of principle and legitimate public concern, however, the public does not expect a justice to “go along to get along.” The public trusts, or should be able to trust, that the justices of this Court will not transform the Court into a “secret society” by making rules to protect themselves from public scrutiny and accountability.
Yet the public also expects that justices will exercise wise and temperate discretion when disclosing information regarding the operations of the Court and the justices’ performance of their duties. The public does not expect, and likely would not tolerate, being informed every time a justice changes positions on a matter before the court, or every time a justice loses his temper with a colleague. The public expects justices to debate frankly, to be willing to change positions when persuaded by better argument, and to be willing to admit that they have changed their positions. Moreover, momentary, human imperfections do not affect the work of the Court. The public would lose patience with and not support a justice who recklessly and needlessly divulged such information for intemperate or political reasons. It is an elected or appointed justice’s compact with the people that, whenever possible, a justice will make all reasonable efforts to correct problems on the Court from within.
But the public needs and expects to be informed by a justice when repeated abuses of power and/or repeated unprofessional conduct influence the decisions and affect the work of their Supreme Court and the justice system. I believe it is my duty and right to inform the public of such repeated abuses and/or misconduct if and when they occur.
*1268 I recognize that there is a federal judicial deliberative privilege of uncertain scope in federal common law, but that is not Michigan law and is not binding on this Court. Moreover, the deliberative privilege articulated in federal law does not prevent a justice from speaking out regarding matters of legitimate public concern. Pickering v Bd of Ed, 391 US 563 (1968).
The federal deliberative privilege is narrowly construed and qualified and it does not apply to administrative actions. Furthermore, that privilege is not intended to protect justices, but rather operates to protect the public confidence in the integrity of the judiciary.
For such public confidence to be warranted, the Michigan Supreme Court must be orderly and fair and must act with integrity, professionalism, and respect. In a pertinent case, the federal Fifth Circuit Court of Appeals addressed whether a judge could be reprimanded for publicly commenting upon the administration of justice as it related to a case in his court. Scott v Flowers, 910 F2d 201 (CA 5, 1990). The court cited Pickering, supra, in recognition that the deliberative privilege could not prevent the judge from truthfully speaking out regarding matters of legitimate public concern where the judge’s First Amendment rights outweighed the government’s interest in promoting the efficient performance of its function.
In light of Pickering, supra, the Scott court concluded:
Neither in its brief nor at oral argument was the Commission able to explain precisely how Scott’s public criticisms would impede the goals of promoting an efficient and impartial judiciary, and we are unpersuaded that they would have such a detrimental effect. Instead, we believe that those interests are ill served by casting a cloak of secrecy around the operations of the courts, and that by bringing to light an alleged unfairness in the judicial system, Scott in fact furthered the very goals that the Commission wishes to promote. [Scoff, supra at 213.]
The Scott court thus held that the judge could not constitutionally be reprimanded for making public statements critical of the court.
The federal deliberative privilege as defined in the federal common law does not extend to every utterance and action within the Court’s conferences and communications. It does not protect actions taken on non-adjudicative matters involving administrative responsibilities. It also does not extend to actions or decisions of the Court, because the actions and decisions of the Court are not deliberations, they are facts that occur at the end of a deliberative period.
Further, any judicial deliberative privilege does not extend to repeated resort to personal slurs, name calling, and abuses of power, such as threats to exclude a justice from conference discussions, to ban a justice from the Hall of Justice, or to hold a dissenting justice in contempt. Nor does any judicial privilege extend to conduct such as refusing to meet with justices on the work of the Court as the majority of four have now twice done on November 13 and November 29, 2006. The privilege *1269 certainly does not extend to illegal, unethical, and improper conduct. Abuses of power and grossly unprofessional conduct are entirely unrelated to the substantive, frank, and vigorous debate and discussion of pending or impending adjudicated cases that a properly exercised judicial privilege should foster.
An absolute judicial deliberative privilege that the majority of four of this Court has wrongly created in AO 2006-08 does not exist in the Michigan Constitution, statutes, case law, court rules, or Code of Judicial Conduct, and should not be allowed to prohibit the publication of any justice’s dissent or concurrence.
Perhaps further attempts to define the scope of the so-called “judicial deliberative privilege” in Michigan may be warranted. However, the privilege cannot effectively be expanded beyond that expressed within the Code of Judicial Conduct through the abrupt, unconstitutional adoption of Administrative Order 2006-08, the “gag order.”
Most importantly, any judicial deliberative privilege defined in any rule or order must not infringe on a justice’s constitutional duties and rights. Const 1963, art 6, § 6 requires that
Decisions of the Supreme Court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal. When a judge dissents in whole or in part he shall give in writing the reasons for his dissent. (Emphasis added.)
Any new court rule or administrative order on deliberations that would force a dissenting or concurring justice to not include in his dissent or concurrence any or all of his reasons would interfere with the justice’s duty under art 6, § 6. In effect, such a rule would allow the majority justices to re-write the dissent or concurrence, silence their opposition, and would be unconstitutional. AO 2006-08 is such an unconstitutional rule.
If the majority wanted to attempt to further define the so-called “judicial deliberative privilege” in Michigan, it should have done so by opening an administrative file on the issue and by inviting public comment before making a rash decision to adopt a “gag order” without public notice or comment and before implementing the “gag order” by ordering the suppression of a fellow justice’s dissent. After all, any judicial deliberative privilege must serve the public’s interest in maintaining an efficient and impartial judiciary, not the justices’ personal interests in concealing conduct that negatively and seriously affects the integrity and operations of the Court. The public must, therefore, have a voice in defining the boundaries of any expanded so-called “judicial deliberative privilege” that the majority of this Court desires to legislate. I have already expressed in dissents on administrative matters (which the majority has refused to release) that the majority of four has repeatedly abused its authority in the disposition of and closure of ADM 2003-26, the Disqualification of Justices file. They have mischaracterized final actions *1270 as straw votes and failed to correct, approve and publish minutes, and my dissents thereto, for conferences on the Disqualification of Justices file, ADM 2003-26, dating back almost ten (10) months to March 1, 2006.
Regrettably, under the guise of promoting frank discussion, the majority of four has tried to erect an impermeable shield around their abusive conduct — itself the cause of the breakdown of frank, respectful and collegial discussion on this Court. No law or rule exists to support this idea, anywhere. The majority of four have precipitously and abruptly adopted AO 2006-08 without notice to fellow justices or the public, and without opportunity for public comment.
Over the past year and longer, the majority of four, Chief Justice Taylor and Justices Corrigan, Young, and Markman, have advanced a policy toward greater secrecy and less accountability. I strongly believe that it is past time to end this trend and to let sunlight into the Michigan Supreme Court. An efficient and impartial judiciary is “ill served by casting a cloak of secrecy around the operations of the courts.” Scott, supra.
APPENDIX E

 On December 6, 2006, moved by Chief Justice Taylor, and seconded by Justices Corrigan and Young, the majority of four adopted AO 2006-08. Justices Cavanagh, Weaver, and Kelly dissented. As adopted the order states:
The following administrative order, supplemental to the provisions of Administrative Order 1997-10, is effective immediately.
All correspondence, memoranda and discussions regarding cases or controversies are confidential. This obligation to honor confidentiality does not expire when a case is decided. The only exception to this obligation is that a Justice may disclose any unethical, improper or criminal conduct to the JTC or proper authority.
Cavanagh, Weaver and Kelly, JJ., dissent. Dissenting statements by Weaver and Kelly, JJ., to follow.

 Const 1963, art 6, § 6 requires that:
Decisions of the Supreme Court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal. When a judge dissents in whole or in part he shall give in writing the reasons for his dissent. (Emphasis added.)

 Scott v Flowers, 910 F2d 201, 213 (CA 5, 1990).

 Note that AO 2006-08 must be placed on the public hearing notice for January 17, 2007, by December 20, 2006, to conform to the 28 day notice requirement of AO 1997-11.

 By requiring that justices give reasons for their decisions in writing, Michigan Constitution, art 6, § 6 gives the people of Michigan an opportunity to improve justice by providing a window to learn how their Supreme Court is conducting Michigan’s judicial business. Furthermore, *1264 requiring written decisions from justices provides information and guidance for case preparation to future litigants, who may have similar issues to decided cases.

 On November 13, 2006, Chief Justice Taylor and Justices Corrigan, Young, and Markman voted to adopt an Internal Operating Procedure (IOP) of the Court, substantively identical to the “gag order” adopted by AO 2006-08. Justices Cavanagh and Kelly abstained. I voted against the IOP/secret “gag rule.” The majority of four adopted the IOP/secret “gag rule” in an unannounced executive session from which court staff were excluded. As adopted on November 13, the IOP/secret “gag rule” states:
All memoranda and conference discussions regarding cases or controversies on the CR and opinion agendas are confidential. This obligation to honor confidentiality does not expire when a case is decided. The only exception to this obligation is that a Justice may disclose any unethical or criminal conduct to the Judicial Tenure Commission or proper law enforcement authority.
IOPs are unenforceable guidelines adopted by majority vote, without public notice or comment, and can be changed at any time, without public notice or comment, by a majority vote. (See Supreme Court internal operating procedures at <http://courts.michigan.gov/supremecourt/> (accessed on December 19, 2006), which provides in a disclaimer that the IOPs are unenforceable and only require a majority vote to be adopted.) The adoption of this IOP was never reported in the Supreme Court minutes. It appears that the majority found that the hastily adopted IOP “gag rule” would not be a proper vehicle to suppress my dissents because my dissents could not be suppressed by color of an unenforceable court guideline.
*1265 Thus, on November 29, 2006 the majority moved and seconded the adoption of an “emergency” Michigan Court Rule, another “gag rule,” to suppress my dissents and concurrences. The majority discussed but tabled the new proposed emergency court rule that was substantively identical to AO 2006-08 “gag order” that was adopted on December 6, 2006.
Finally, on December 6, 2006, during an unrelated court conference, without public notice or opportunity for public comment, the majority adopted AO 2006-08, the “gag order.” There was no notice given to the justices that an administrative order was to be considered, nor was the matter ever on an administrative agenda of this Court. Nonetheless, AO 2006-08 was adopted by a 4-3 vote by Chief Justice Taylor and Justices Corrigan, Young, and Markman. Shortly thereafter, it was moved, seconded, and adopted by a 4-3 vote, by Chief Justice Taylor and Justices Corrigan, Young, and Markman, to suppress my dissent in Grievance Administrator v Fieger, #127547, motion to stay. Justices Cavanagh, Weaver and Kelly dissented. Chief Justice Taylor then ordered the clerk of court, who was present, not to publish my dissent in Fieger.

 In the order, AO 2006-08 states that AO 2006-08 is “supplemental to the provisions of Administrative Order 1997-10.” I note that Administrative Order 1997-10 (AO 1997-10) does not prohibit a justice of the Supreme Court from disclosing information.
By its plain language, AO 1997-10 is inapplicable. It addresses public access to judicial branch administrative information. The order lists types of information that this Court can exempt from disclosure when faced with a request from the public for that information. Administrative Order 1997-10 is not relevant to and does not prohibit a justice of this Court from disclosing information, even information that might be considered deliberative, when disclosure involves matters of legitimate public concern.

 To abstain is “[t]o refrain from something by one’s own choice.” Webster’s New World Dictionary, 2nd College Edition (1982).

 For example, most recently, in Justice Cavanagh’S concurring statement in In re Haley, 476 Mich 180, 201 n 1 (2006), he stated:
This Court is currently engaged in a discussion about the proper procedure for judicial disqualifications, as well as the ethical standards implicated in such a procedure. Further, this Court will soon be asking for public comment and input to further this discussion in a more open manner.
In addition, in his dissent in Grievance Administrator v Fieger, 476 Mich 231, 327 n 17 (2006), Justice Cavanagh stated:
Further, while I do not join in the fray between the majority and my colleague Justice Weaver, I take this opportunity to note that three alternate proposals, two of which have been crafted by *1267 this majority, regarding how this Court should handle disqualification motions have been languishing in this Court’s conference room for a substantial period of time. In the same way I will look forward to the dust settling from the case at bar, I will similarly anticipate this Court’s timely attention to the important matter of disqualification motions. I take my colleagues at their word that the issue of disqualification will be handled in a prompt manner in the coming months.
Note that Justice Cavanagh’s statements, published in his concurrence in Haley and his dissent in Fieger, were not objected to by any justice, including the majority of four.
In addition to these more recent references to matters discussed at judicial conferences, see In re Mathers, 371 Mich 516 (1963).